Filed 12/10/21  In re Juliana P. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re JULIANA P., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G060338 |
| Plaintiff and Respondent, | (Super. Ct. No. 19DP0625) |
| v. | O P I N I O N |
| MONICA P., | |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Isabel Apkarian, Judge.  Conditionally affirmed and remanded.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

## INTRODUCTION

The sole issue in this appeal from a juvenile court order placing minor Juliana P. in legal guardianship is the application of the Indian Child Welfare Act (ICWA) to the facts of this case. Specifically, Juliana's mother, Monica P., asserts that the juvenile court and Orange County Social Services Agency (SSA) did not fulfill their duty of inquiry under ICWA.

The record in this case indicates that the court and SSA did not fulfill their duty of inquiry under ICWA. SSA simply dismissed Monica's statements regarding possible Indian ancestry without, apparently, seeking to interview family members who would presumably have been able to confirm or negate Monica's claims. The court likewise did not, at least as far as this record indicates, conduct any inquiry into Juliana's possible Indian ancestry.

Accordingly, we conditionally affirm the juvenile court's order of legal guardianship for Juliana and remand the matter to the juvenile court for further proceedings with respect to compliance with ICWA.

## FACTS

Juliana was 10 years old when she was detained in May 2019. Monica had left her with an elderly roommate, who called police, stating that she did not know where Monica had gone or when she would return. Juliana told SSA at a later interview that she had been "'scared all night.'"[1]

The detention report documented telephone calls from two of Monica's sisters regarding Juliana and a conversation with the husband of one sister. SSA also spoke with Juliana's adult sibling, with whom Juliana had been staying just before she and Monica moved in with the roommate. Monica told her case worker in late May 2019

---

[1] When she finally appeared, Monica's explanation to police of where she had been and what she had been doing raised questions about her mental health.

that her mother lived in Ontario, California. Diane G., another maternal relative who resided in Georgia, was identified as a possible relative placement in October 2020.

At the detention hearing on May 22, 2019, her attorney disclosed to the court that Monica may have American Indian ancestry. She had spoken to the ICWA worker, who would do the necessary investigations. She completed and filed the ICWA form, and the court found that the Act may apply.[2] Notice of Child Custody Proceeding for Indian Child was filed on June 12 and served on the Sacramento Director of Indian Affairs. Proof of delivery was filed on June 20.

In the detention report, SSA stated that Monica "believed there is Native American heritage in her family of origin, did not know the name of the tribe, and provided family information available to her. [She] was unable to provide contact information to relatives with further information." She also stated that she had a DNA test revealing North American Indian heritage, "despite her family of origin being from El Salvador."

Juliana was moved from Orangewood to a foster home at the end of May 2019. She moved to another foster home on September 30, 2020.

At the hearing on June 20, 2019, Monica pleaded no contest to the amended petition. The minute order of that date stated "[ICWA] documentation has been filed with the court" and "Court finds notice of hearing was given to the BIA and all appropriate tribes in accordance with [ICWA]." The reporter's transcript of the hearing, however, records no mention whatsoever of ICWA; the main topic of the day was whether Monica had knowingly waived her rights by pleading no contest.

Between June 2019 and August 2020, the only notations in the minute orders concerning ICWA are that ICWA documents had been filed with the court. Finally, in June 2020, someone at SSA noticed that the court had not made the required

---

[2]     On the form, Monica stated "I may have Indian ancestry." The spaces for name of tribe and name of band were blank.

ICWA findings and asked the court to make them. After another prodding from SSA, the court found, on August 4, 2020, that "ICWA does not apply." No reporter was present at the hearing.

The status review report of November 19, 2020, stated that "[n]o new information has come to light, which would warrant a new search" regarding Indian ancestry. The record does not indicate any further investigation on SSA's part of Indian ancestry.

On May 4, 2021, the juvenile court selected legal guardianship as Juliana's permanent plan and terminated dependency proceedings. In light of Juliana's age (12), her close relationship with her mother, and her wish not to be adopted, the court found that the parental benefit exception applied. Through her counsel, Juliana asked for phone calls with her mother to be limited to one per week and visits to be limited to one per month, a request the court granted. Monica left the hearing before its conclusion.

## DISCUSSION

The sole issue Monica has raised on appeal is compliance with ICWA. She asserts that SSA and the juvenile court did not fulfill their duty of inquiry under the Act. Our record requires us to agree.

An "'Indian child'" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903, subd. (4).) An "'Indian tribe'" is "any Indian tribe . . . or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the Interior] because of their status as Indians . . . ." (*Id*., subd. (8).)

California Rule of Court, rule 5.481(a)(1) provides, "Inquiry The court, court-connected investigator, and party seeking a foster-care placement, guardianship, conservatorship, custody placement under Family Code section 3041, declaration freeing a child from the custody or control of one or both parents, termination of parental rights,

4

preadoptive placement, or adoption have an affirmative and continuing duty to inquire whether a child is or may be an Indian child in all proceedings identified in rule 5.480. The court, court-connected investigator, and party include the county welfare department, probation department, licensed adoption agency, adoption service provider, investigator, petitioner, appointed guardian or conservator of the person, and appointed fiduciary. [¶] (1) The party seeking a foster-care placement, guardianship, conservatorship, custody placement under Family Code section 3041, declaration freeing a child from the custody or control of one or both parents, termination of parental rights, preadoptive placement, or adoption must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, *extended family members*, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child . . . ."  (Italics added.)

"[T]he burden of coming forward with information to determine whether an Indian child may be involved . . . does not rest entirely – or even primarily – on the child and his or her family.  Juvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child. [Citations.]"  (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see also *In re Breanna S.* (2017) 8 Cal.App.5th 636, 652 (*Breanna S.*), overruled on other grounds *In re Caden C.* (2021) 11 Cal.5th 614.)  Adequate investigation of family members is essential because the parents themselves may not even be aware of Indian ancestry.  (See *In re S.R.* (2021) 64 Cal.App.5th 303, 314-315 [parents unaware of tribal affiliation; duty of court and welfare department to ask "all relevant individuals" and to interview "extended family members"].)

The record in this case indicates that Monica was not always a reliable witness. Sometimes she appeared to grasp what was going on, but at other times she reportedly made some rather bizarre statements.[3]

SSA, however, had easy access to at least two members of Monica's family who appeared to be quite reliable – her sisters. In addition, SSA knew that Monica's mother resided in Southern California, and it became aware of a maternal cousin in Georgia before filing the November 2020 status report. The record does not indicate any effort whatsoever to interview Monica's sisters about possible Indian ancestry, even though they were contacted at least twice on other subjects. Nor is there any indication that SSA ever tried to contact Monica's mother. SSA initiated an application for an out-of-state relative placement for Monica's cousin Diane, but does not appear to have questioned her about possible Indian ancestry.

As stated above, the court has an independent duty to inquire about Indian ancestry. (See *In re Samuel P.* (2002) 99 Cal.App.4th 1259, 1266-1267.) As far as this record shows, the court merely belatedly accepted a conclusion by SSA that was not based on any facts in our record. "[T]he court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.)

We agree with SSA that it is unlikely that Monica, whose immediate family comes from El Salvador, is affiliated with an Indian tribe to which ICWA applies. Nevertheless, the statute requires an inquiry, and simply dismissing Monica's statement that she was – without any effort to follow up with other known and nearby relatives – does not fulfill SSA's duty of inquiry. (See Cal. Rules of Court, rule 5.481(a)(1).)

---

[3] For example, she attributed positive drug patch tests for codeine and methamphetamine to drugs having got into her personal items while she was sleeping at a local church or to having an intimate relationship with a drug user.

6

Accordingly, we conditionally affirm the juvenile court's order of legal guardianship for Juliana. (See *Breanna S., supra,* 8 Cal.App.5th at p. 656; *In re Michael V., supra,* 3 Cal.App.5th at p. 236.) The condition is that SSA will inquire regarding Indian ancestry from Monica's available relatives and the court will hold a hearing on the outcome of this inquiry. If it turns out there is some foundation to Monica's claims, the court will proceed in accordance with the statutory dictates. Otherwise, the order of guardianship is affirmed.

## DISPOSITION

The Welfare and Institutions Code section 366.26 order of legal guardianship is conditionally affirmed. The matter is remanded to the juvenile court for compliance with the inquiry and notice provisions of ICWA and related California law and for further proceedings not inconsistent with this opinion.

BEDSWORTH, J.

WE CONCUR:

O'LEARY, P. J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.