Filed 8/4/22  In re Jay C. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Jay C., et al., Persons Coming Under the Juvenile Court Law. | B317845 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 18CCJP04865A,B) |
| Plaintiff and Respondent, | |
| v. | |
| Candi F., et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Tara Newman, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant Candi F.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant Robert C.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica J. Randazzo, Deputy County Counsel for Plaintiff and Respondent.

_____

Candi F. (mother) and Robert C. (father) appeal from the juvenile court's orders terminating parental rights to their children, Jay C. (born in June 2013) and Ariana C. (born in June 2014). The parents contend the orders should be reversed because the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the inquiry and notice provisions of state law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We conclude substantial evidence supported the juvenile court's ICWA finding, the juvenile court did not abuse its discretion by finding that DCFS conducted an adequate ICWA investigation, and any error was not prejudicial. We therefore will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Background.

In July 2018, DCFS received a report that mother was suicidal and verbally and physically abused the children, then four and five years old. Father did not live with the family and his whereabout were unknown. The children were removed from mother and placed with paternal aunt Angelique R., who is the prospective adoptive parent.

On August 2, 2018, DCFS filed a juvenile dependency petition alleging the children were at substantial risk of serious physical harm within the meaning of Welfare and Institutions

Code[1] section 300, subdivisions (a) and (b) because mother and maternal uncle Jay C. had a violent physical altercation in the children's presence (counts a-1, b-3), mother physically abused the children by pulling Ariana's hair, striking the children with an open hand, and pulling the children's arms (count a-2, b-4), mother had a history of drug abuse and was a current abuser of methamphetamine and alcohol (count b-1), and mother had a history of mental and emotional problems, including diagnoses of bipolar disorder, borderline personality disorder, and suicidal ideation (count b-2).

On October 3, 2018, the court sustained the allegations of the petition, and on October 10, 2018, it declared the children juvenile court dependents and ordered reunification services for mother. No services were ordered for father because his whereabouts were unknown.

Mother's reunification services were terminated at the 12-month review hearing on October 30, 2019. The section 366.26 hearing initially was set for March 3, 2020, but was continued many times, in large part due to the Covid-19 pandemic. Parental rights ultimately were terminated on January 11, 2022.

Mother and father timely appealed from the orders terminating parental rights.

## II.    ICWA inquiry.

### A.    Inquiry as to mother.

An ICWA-010 form attached to the juvenile dependency petition stated that a children's social worker (CSW) had spoken

---

[1]    All subsequent undesignated statutory references are to the Welfare and Institutions Code.

3

to mother in person on July 31, 2018, and mother said the children had no known Indian ancestry. At about the same time, DCFS spoke to maternal grandmother Mary M., maternal great-aunt Julie C., and maternal great-uncle Dennis S., but apparently did not ask about the family's possible Indian ancestry.

On August 6, 2018, mother signed a Parental Notification of Indian Status form (ICWA-020), in which she stated under penalty of perjury that to her knowledge she had no Indian ancestry. The form advised mother that she must provide all requested information about the children's Indian status and, if she subsequently got new information that would change her answers, she must let her attorney and the CSW know immediately.

Mother appeared at the August 6, 2018 detention hearing; father did not. The court noted that it had received mother's ICWA-020 form, and it asked mother whether father had any Native American ancestry. Mother said father had no Indian ancestry to her knowledge. The court therefore found "there is no reason to know this is a case involving the Indian Child Welfare Act," but said it would revisit the issue if father brought further information to the court's attention.

On January 12, 2021, the court noted that mother had previously said she had no known Indian ancestry and asked whether that information was still accurate. Mother said it was. Mother also said she was not aware that father had any Indian ancestry. The court therefore restated its prior finding that ICWA did not apply.

4

## B.  Inquiry as to father.

Father contacted the CSW on August 2, 2018, several days after the children were removed from mother.  The CSW advised father of the upcoming detention hearing but apparently did not ask him about possible Indian ancestry.  The CSW also did not make an ICWA inquiry of paternal grandmother Linda G. or paternal aunt Angelique T., with whom the CSW spoke the same day.

Father did not appear at the detention hearing and counsel was not appointed on his behalf.  Mother identified father as the children's father and said that, to her knowledge, he had no Indian ancestry.  The court found father to be the children's presumed father and found it had no reason to know the children were Indian children.

Father's whereabouts were unknown from August 2018 until late March 2021, when he contacted the CSW.[2]  Counsel was appointed for father at a May 28, 2021 hearing.  Father did not appear at that hearing, but an unsigned ICWA-020 form was submitted by his counsel on his behalf, which stated that he may have Indian ancestry and that the paternal grandmother might have more information.[3]  The juvenile court ordered DCFS "to

---

[2]  Father also spoke briefly to the CSW in October 2018.  The phone connection was reported to be poor.  Father agreed to meet with the CSW in person on October 9, 2018, but he did not show up for that appointment and did not respond to the CSW's subsequent phone message.

[3]  The ICWA–020 form says "*maternal* grandmother may have more information," but in response to the court's question,

5

follow up immediately on interviewing [the] paternal relatives and the person [father] identifies as potentially having information [and to] send notices as appropriate."

On June 10, 2021, a CSW attempted to call both father and the paternal grandmother. Neither answered, the CSW left messages requesting a call back, and neither responded. The same day, the CSW spoke to paternal aunt Angelique, who said she had been told the family had Indian ancestry but she could not identify a tribe. She said her mother (the paternal grandmother), and her grandmother (the paternal great-grandmother) might have more information, and she provided their phone numbers.

On June 14, 2021, the CSW called the paternal great-grandparents and spoke to paternal great-grandfather Johnny P., while paternal great-grandmother Antonia (Toni) P. listened and answered in the background. Johnny said his family was from Mexico and had no Indian ancestry. Toni said all four of her grandparents may have been affiliated with the Santo Domingo Pueblo tribe in New Mexico, but to her knowledge her grandparents had not been tribal members, attended Indian schools, or lived on a reservation. Her family was from the areas of Espanola, Al Calde, or Del Largo, in New Mexico. Toni provided the names of her parents and grandparents, but she did not know their dates of birth. Toni and Johnny also provided their own birth dates, as well as that of their daughter (the paternal grandmother).

father's counsel clarified that the form should have said "*paternal* grandmother."

6

On June 16, 2021, the CSW mailed ICWA notices to the Santo Domingo Pueblo tribe and the Bureau of Indian Affairs (BIA). The notices included mother's name and address, father's name, address, and date of birth, and names and birth dates, where available, for father's mother, grandparents, great-grandparents, and great-great-grandparents. About a week later, the CSW sent letters to the tribe and BIA that attached the children's birth certificates and a family tree, and asked the tribe to search its census roll to determine whether father or the children were eligible for tribal membership.

On July 14, 2021, the tribe informed DCFS that neither the children nor the parents were "members [or] eligible for membership with the Pueblo of Santo Domingo."

On January 20, 2022, the juvenile court found as follows: "The Pueblo Santo Domingo tribe responded stating the minors are not eligible and [do not] qualify to be deemed . . . Indian minors. The court has no reason to know or believe that [these are] Indian child[ren as] defined by the Indian Child Welfare Act. The provisions of ICWA are not applicable to this case."

## DISCUSSION

The parents contend that DCFS failed to comply with its duty of initial inquiry pursuant to section 224.2 because it failed to ask father about possible Indian ancestry at the case's inception and failed to make an ICWA inquiry of available extended family members, including maternal aunt Julie C., maternal uncle Dennis S., maternal uncle Jake M., maternal great-grandmother Mary M., paternal aunt Angelique T., paternal grandmother Linda C., and paternal grandfather Samuel C. The parents further contend that DCFS failed to discharge its duty of further inquiry after it learned of father's

7

possible Indian ancestry because it made only one attempt to contact the paternal grandmother, did not speak directly to paternal great-grandmother Toni P., and made no attempt to speak to paternal grandfather Samuel C. Finally, the parents assert that DCFS failed to discharge its duty of notice because the ICWA notices sent were inaccurate and incomplete. The parents contend these errors were prejudicial, and thus the matter should be reversed and remanded to the juvenile court for a further ICWA inquiry.

As we discuss, we find the parents' contentions to lack merit, and we therefore will affirm the orders terminating parental rights.

## I. Legal standards.

### A. ICWA.

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.)

"Juvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see also *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).) An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian

8

tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of "Indian child"].)

The affirmative duty to inquire has several elements. If a child is removed from his or her parents and placed in the custody of a county welfare department, the department must inquire whether a child is an Indian child. Such inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).) The court also must make an ICWA inquiry when the parents first appear in court: The court "shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)), and must require each party to complete California Judicial Council Form ICWA-020, Parental Notification of Indian Status (Cal. Rules of Court, rule 5.481(a)(2)(C)).

If the court or social worker has "reason to believe that an Indian child is involved in a proceeding," the court or social worker must "make further inquiry regarding the possible Indian status of the child" by, among other things, interviewing the parents and extended family members, and contacting any tribe that may reasonably be expected to have information about the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(2).) There is "reason to believe" a child involved in a proceeding is an Indian child whenever the court or social worker "has information suggesting that either the parent of the child or

9

the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e)(1).)

If the agency's inquiry creates a "reason to know" that an Indian child is involved, notice of the proceedings must be provided to the parent, legal guardian, or Indian custodian and the child's tribe.  (§ 224.2, subd. (f).)  There is "reason to know" a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child "is an Indian child," the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe.  (§ 224.2, subd. (d).)  Thereafter, the court shall confirm that the agency used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership.  (§ 224.2, subd. (g).)  A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe "shall be conclusive."  (§ 224.2, subd. (h).)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child," the court may make a finding that ICWA does not apply to the proceedings, "subject to reversal based on sufficiency of the evidence."  (§ 224.2, subd. (i)(2).)

B.    **Standard of review.**

As noted above, section 224.2, subdivision (i)(2) sets out two statutory predicates to a juvenile court's finding that ICWA does

10

not apply.  First, the court must determine whether there is "reason to know" whether the child is an Indian child.  Second, the court must decide whether a "proper and adequate further inquiry and due diligence as required in this section have been conducted."  If the court finds an adequate inquiry has been conducted and there is no reason to know a child is an Indian child, "the court may make a finding that the federal Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) does not apply to the proceedings."  (§ 224.2, subd. (i)(2).)

The first element—whether there is reason to know whether the child is an Indian child—requires the juvenile court to determine, based on the evidence before it, whether any one of six statutory criteria is met—e.g., (1) the court has been advised that the child "is an Indian child," (2) the child's or parent's residence is on a reservation, (3) any participant in the proceeding informs the court that it has discovered information indicating the child is an Indian child, (4) the child gives the court reason to know that he or she is an Indian child, (5) the child is or has been a ward of a tribal court, or (6) either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe.  (§ 224.2, subd. (d).)  If none of these six factors is met, the court must make a finding that there is no reason to know the child is an Indian child.  Because this determination is fundamentally factual, we review it for substantial evidence.  (*In re Caden C.* (2021) 11 Cal.5th 614, 639–640 (*Caden C.*) [factual determinations reviewed for substantial evidence]; *In re Ezequiel G.* (July 29, 2022, B314432) __ Cal.App.5th __ [2022 WL 3009914, *7]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re D.F.* (2020) 55 Cal.App.5th 558, 565.)  In other words, we "should 'not reweigh the evidence,

11

evaluate the credibility of witnesses, or resolve evidentiary conflicts,'" but should uphold the lower court's determinations "if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.'" (*Caden C.*, at p. 640; *In re J.N.* (2021) 62 Cal.App.5th 767, 774; *In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

The second element—whether a "proper and adequate further inquiry and due diligence as required in this section have been conducted"—is somewhat different. Deciding whether an inquiry was "adequate" and an agency acted with appropriate diligence requires more of a court than simply applying a statutory checklist to undisputed facts. Instead, it requires the court to "engage in a delicate balancing" (see *In re Caden C.*, *supra*, at p. 640) to assess whether an ICWA inquiry was appropriate and sufficient in light of the facts of a particular case. In short, the statute directs the juvenile court to perform a quintessentially discretionary function, and thus we review it for abuse of discretion. (*In re Ezequiel G.*, *supra*, __ Cal.App.5th __ [2022 WL 3009914, at *7.])

If we conclude that the trial court erred in finding that an adequate ICWA inquiry was conducted, we will return the case to the juvenile court only if the error was prejudicial—that is, if "the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779.) As our colleagues in Division Two have recently explained, this test is "outcome focused," asking whether "it is reasonably probable that an agency's error in not conducting

12

a proper initial inquiry affected the correctness (that is, the *outcome*) of the juvenile court's ICWA finding," and remanding only in those cases "in which the record gives the reviewing court a reason to believe that the remand may undermine the juvenile court's ICWA finding." (*Id*. at pp. 781–782, italics added.)

## II. The trial court did not prejudicially err in finding that the children are not Indian children and ICWA does not apply to this case.

### A. Mother's family.

Although mother denied Indian ancestry below, she and father contend on appeal that DCFS's failure to make an ICWA inquiry of her extended family was reversible error. We disagree.

As to the first element of the ICWA finding, we conclude that substantial evidence unquestionably supported the juvenile court's finding that there is no reason to know the children are Indian children on mother's side. DCFS made an initial ICWA inquiry before filing the petition, and it attached to the petition an ICWA-010 form attesting that an Indian child inquiry had been made of mother and she had no known Indian ancestry. Subsequently, mother signed an ICWA-020 form in which she stated, under penalty of perjury, that she did not have Indian ancestry, and the juvenile court acknowledged mother's denial on the record. Mother denied Indian ancestry again at a January 12, 2021 hearing, when the court asked whether her prior answer was still accurate. At no point—including now, on appeal—has mother suggested her response was inaccurate, and no member of mother's extended family has ever told DCFS that the children have Indian ancestry on mother's side. Accordingly, all the evidence before the juvenile court required the conclusion that

13

there was no reason to know the children are Indian children through mother's family.

As to the second element of the ICWA finding, we conclude the juvenile court did not abuse its discretion in concluding that DCFS conducted an adequate inquiry. In reviewing a juvenile court's ICWA findings for abuse of discretion, the key question for a reviewing court is whether the ICWA investigation has reliably answered the question at the heart of the ICWA inquiry: Whether a child involved in a proceeding "is or may be an Indian child" (§ 224.2, subd. (a))—that is, whether he or she either (a) "is a member of an Indian tribe" or (b) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903, subd. (4); see also § 224.1, subds. (a)–(b).) In other words, the focus of the court's analysis is not on the number of individuals interviewed, but on whether the agency's ICWA inquiry has yielded reliable information about a child's possible tribal affiliation. (*In re Ezequiel G.*, *supra*, __ Cal.App.5th __ [2022 WL 3009914, at *9.])

As we recently explained, " 'ICWA does not apply simply based on a child or parent's Indian ancestry.' " (*In re Ezequiel G.*, *supra*, __ Cal.App.5th __ [2022 WL 3009914, at *9], citing U.S. Dept. of Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016) (BIA Guidelines), p. 10 <https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf> [as of August 2, 2022], archived at <https://perma.cc/X4FM-FHXE>.) Instead, "the definition of "Indian child" is "based on the child's *political ties* to a federally recognized Indian Tribe, either by virtue of the child's own citizenship in the Tribe, or through a biological parent's

14

citizenship and the child's eligibility for citizenship." (Indian Child Welfare Act Proceedings, 81 Fed.Reg. 38795 (June 14, 2016) (BIA ICWA Proceedings), italics added.) In other words, an Indian child is one with a *tribal affiliation*, not merely Indian ancestry.

"Tribal citizenship (aka Tribal membership) is voluntary and typically requires *an affirmative act* by the enrollee or her parent." (BIA ICWA Proceedings, *supra*, 81 Fed.Reg. at p. 38783.) Specifically, "Tribal laws generally include provisions requiring the parent or legal guardian of a minor *to apply for* Tribal citizenship on behalf of the child. [Citation.] Tribes also often require an affirmative act by the individual seeking to become a Tribal citizen, such as the filing of an application. [Citation.] As ICWA is limited to children who are either enrolled in a Tribe or are eligible for enrollment and have a parent who is an enrolled member, *that status inherently demonstrates an ongoing Tribal affiliation*." (*Ibid*., italics added; see also BIA Guidelines, *supra*, at p. 10 ["Most Tribes require that individuals apply for citizenship and demonstrate how they meet that Tribe's membership criteria."].) Because membership in an Indian tribe therefore requires that an individual or his or her parent *apply* for tribal membership, a child's parents will, in most cases, be the best source of information for determining whether a child is an Indian child.

In the present case, nothing in the record gives us reason to doubt the accuracy of mother's denial of a tribal affiliation. At the time of the detention hearing, mother lived with her mother (the maternal grandmother), her grandmother (the maternal great-grandmother), and her brother (the maternal uncle), and she lived across the street from her aunt and uncle (the maternal

15

great-aunt and great-uncle). In view of her relationship with her extended family, the possibility that mother might unknowingly be a member of a tribe appears trivially small. Further, when the juvenile court found it had no reason to know the children were Indian children on August 6, 2018 and January 12, 2021, neither mother nor her attorney objected or indicated that the information was incorrect or that mother was unsure about her ancestry. (See Super. Ct. L.A. County, Local Rules, rule 7.17(a) ["An attorney representing a client in dependency court shall affirmatively inquire of their client as to whether the client has reason to believe that any child appearing in the dependency court has Indian heritage under the ICWA. Every effort should be made by counsel to assist confirmation of a child's Indian status and tribal membership."].) The juvenile court therefore did not abuse its discretion by concluding that DCFS conducted an adequate ICWA inquiry as to mother.

For all the same reasons, even if the juvenile court erred by finding DCFS's inquiry adequate, that error was not prejudicial because it is not "reasonably probable that an agency's error in not conducting a proper initial inquiry affected the correctness (that is, the *outcome*) of the juvenile court's ICWA finding." (*In re Dezi C.*, *supra*, 79 Cal.App.5th at p. 781, italics added.) As we have said, nothing in the juvenile court record gives us a reason to doubt the accuracy of mother's denial that she or the children were members of or eligible for membership in an Indian tribe, and she has not made a proffer on appeal that she has Indian heritage. No remand therefore is warranted.

### B.    Father's family.

#### 1.    Inquiry.

The parents contend that an inadequate initial inquiry was made regarding father's Indian ancestry, and we agree.  For the first two-and-a-half years of this case, DCFS did not ask father or any member of his extended family whether the family had Indian ancestry.  The failure to inquire of father was perhaps unavoidable:  After making telephone contact with DCFS in August and October 2018, father did not again get in touch with DCFS until March 2021.  His whereabouts were unknown throughout this time, including to his family.  But DCFS had regular contact with father's sister, who was the children's caregiver, and also had contact information for father's mother, with whom the CSW spoke several times.  Plainly, in light of father's unavailability, the statute required DCFS to make an ICWA inquiry of members of father's family, and its failure to do so was error.

We do not agree, however, that DCFS conducted an inadequate ICWA inquiry after father disclosed in May 2021 that he may have Indian ancestry through his mother's family.  After father's disclosure, the CSW immediately attempted to contact father's mother but was unable to reach her, and spoke to father's sister, Angelique.  Angelique said she had heard the family had Indian ancestry but did not know the name of the tribe with which the family might have a connection.  Angelique suggested that the CSW talk to her mother or grandmother, whose phone numbers she provided.  The CSW then spoke to the paternal great-grandmother (father's and Angelique's maternal grandmother), who identified the tribe from which she believed her family descended, the names of her four grandparents who

17

she believed had Indian ancestry, her parents' names, her own birth date, and the name and birth date of her daughter (the paternal grandmother). With this information, the CSW was able to create a detailed family tree that linked the four ancestors believed to have Indian ancestry to the children through six generations. The CSW provided this family tree to the BIA and the Pueblo of Santo Domingo tribe, who responded that neither father nor the children were members or eligible for membership in the tribe.

The parents contend that this inquiry was inadequate because DCFS did not speak to the paternal grandparents about the family's Indian ancestry, but we do not agree. DCFS attempted to reach the paternal grandmother, but received no response to its message. Further, any information the paternal grandmother might have had necessarily would have come from her own parents, with whom the CSW spoke and from whom the CSW received a detailed family tree. As to the paternal grandfather, both father and Angelique said the family's Indian ancestry was through their mother, not their father, and thus the failure to speak to their father was not relevant to the adequacy of the ICWA inquiry. Further, while the parents contend that DCFS erred by failing to speak "directly" to paternal great-grandmother Antonia, the record is clear that while paternal great-grandfather Johnny may have been holding the phone, Antonia "listened [to] and answered" the CSW's questions. We thus conclude that the juvenile court did not abuse its discretion by finding that DCFS made an adequate ICWA inquiry as to father's family.

18

## 2.     Notice.

The parents further contend that the notices sent to the BIA and the Santo Domingo Pueblo were inadequate because they did not comply with section 224.3, subdivisions (a)(5) and (c)—namely, they did not attach the children's birth certificates or the petition, and they did not provide complete information (names, current and former address, birth and death dates, birth places, and tribal enrollment information) for the children's direct lineal ancestors.  Not so.  ICWA notice is required only if after initial and further inquiries there is "reason to *know*" that an Indian child is involved in the proceeding.  (§ 224.2, subd. (f), italics added.)  As we have described, there is "reason to know" a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child is a member or eligible for membership in an Indian tribe, the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (*Id*., subd. (d).)  Here, none of these statutory criteria was met, and thus ICWA notice was not required.  Any insufficiencies in the notices sent, therefore, were legally irrelevant.

## DISPOSITION

The orders terminating parental rights are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


I concur:


EGERTON, J.

LAVIN, J., Dissenting:

For the reasons set forth in my dissent in *In re Ezequiel G.* (July 29, 2022, B314432) \_\_\_Cal.App.5th\_\_\_, I would conditionally affirm the orders and remand for further proceedings.


LAVIN, J.