Filed 8/19/22 In re C.S. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION THREE

| | |
|---|---|
| In re C.S., a Person Coming Under the Juvenile Court Law. | B318139 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19LJJP00495A) |
| Plaintiff and Respondent, | |
| v. | |
| ANDREA S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Commissioner. Affirmed.

Jesse McGowan, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Deputy County Counsel for Plaintiff and Respondent.

Andrea S. (mother) appeals from an order terminating parental rights to her son, C.S. Mother contends the Los Angeles County Department of Children and Family Services (DCFS) failed to adequately investigate the possible Indian ancestry of alleged father Kenneth R. in the manner required by the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law. We find no error, and thus we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Petition and detention; mother's failure to reunify.

C.S. was born in July 2019 and was detained and placed in foster care when he was five days old. On July 23, 2019, DCFS filed a petition alleging that C.S. was a juvenile court dependent pursuant to Welfare and Institutions Code[1] section 300, subdivision (b) because mother had a history of substance abuse, was a current abuser of marijuana, and had a history of mental and emotional problems, including diagnoses of schizoaffective disorder, anxiety, depression, disorganized thoughts, paranoia, and auditory and visual hallucinations.

On September 30, 2019, the juvenile court sustained the allegations of the petition and declared C.S. a juvenile court dependent. The court ordered C.S. removed from mother and granted mother reunification services and monitored visits.

---

[1] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

On December 9, 2020, the juvenile court terminated mother's reunification services and set a hearing to consider terminating parental rights.

## II. Parentage and ICWA inquiries.

A father was not present at C.S.'s birth and was not named on C.S.'s birth certificate. While in the hospital, mother said she "preferred not to say who the Father is" and would ask for a paternity test if anyone claimed to be C.S.'s father. Mother's adult daughter, Alexis, said she believed C.S.'s father was Kenneth R., but when mother was asked about Kenneth, she said only that she did not want him around because he had hit her. A children's social worker (CSW) attempted to reach Kenneth at his last known phone number, but the woman who answered the phone said no one by that name lived there.

At a July 24, 2019 detention hearing, mother filled out a parentage questionnaire in which she identified Kenneth as the probable father, but said she and Kenneth were not married and had not lived together. Mother said Kenneth had not signed C.S.'s birth certificate or other paperwork naming him as C.S.'s father, had not held himself out as C.S.'s father, had not received C.S. into his home, had not helped support C.S. financially, and had not taken a paternity test. Mother said she was married to Fred S., from whom she had separated in about 2011 but had never divorced. Mother also filled out an ICWA-020 form in which she stated she had no Indian ancestry as far as she knew.

Based on mother's disclosures, the court deferred a finding of paternity pending "the appearance of the father." The court further found it did not have reason to know C.S. was an Indian child or that ICWA applied through mother's family. Mother was

instructed to keep the court aware of any new information relating to C.S.'s possible ICWA status.

In late July 2019, DCFS conducted a due diligence search for Kenneth and identified five possible addresses, eight telephone numbers, and one email address. A CSW tried unsuccessfully to reach Kenneth at each of the eight phone numbers, mailed contact letters to the addresses, and sent an email to the email address. The CSW also spoke to mother's estranged husband, Fred S., who said he had not talked to mother in years.

Kenneth contacted a CSW on August 14, 2019. He was homeless but provided an address where he could receive mail. He said he would like a paternity test because he "think[s]" C.S. is his child. He admitted being "mentally unstable" and smoking marijuana regularly. With regard to ICWA, he said, "I have Native American Heritage, Cherokee was not found to be eligible." DCFS attempted to serve Kenneth at the address provided; notice was returned as unclaimed.

At the September 30, 2019 jurisdiction/disposition hearing, the court found Kenneth and Fred to be "alleged only, non-custodial" fathers, and therefore not entitled to reunification services.

Kenneth did not contact DCFS again for nearly two years and never appeared at a hearing. On May 1, 2021, Kenneth called the CSW to request photos of C.S. The CSW encouraged Kenneth to appear at the July 7, 2021 hearing, noting that he could request photos then. Kenneth responded that he was "currently on the run because I have a warrant for my arrest in Los Angeles County." He was living in Northern California with

4

the mother of his older children, who was "not too happy" that he was C.S.'s alleged father.

On July 7, 2021, the juvenile court terminated the parental rights of "Andrea [S.], Fred [S.], Kenneth [R.] . . . and anyone else that claims to be a parent to this child." Mother timely appealed from the order terminating parental rights.

## DISCUSSION

Mother's sole contention on appeal is that DCFS failed to discharge its duty of inquiry under ICWA because it did not investigate Kenneth's claim of Cherokee ancestry or provide informal notice of the dependency proceeding to the Cherokee tribes. For the reasons that follow, mother's claim lacks merit.

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.) The statute applies to "child custody proceeding[s]"— that is, to actions that may result "in the termination of the parent-child relationship." (25 U.S.C. § 1903(1)(ii).)

"Juvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see also *Isaiah W., supra,* 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).) An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."

5

(25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of "Indian child"].)

Because Mother has denied that she has Indian ancestry and because she makes no claim of error as to the investigation of her own ancestry, ICWA can apply only through C.S.'s father. The question for us, therefore, is whether there was sufficient evidence that Kenneth is C.S.'s father to require an investigation of his claimed Indian ancestry.

ICWA's definition of "parent" includes "any biological parent or parents," but expressly *excludes* unwed fathers "where paternity has not been acknowledged or established." (25 U.S.C. § 1903(9); see also § 224.1, subd. (c) [adopting federal definition].)[2] The statute does not specify how paternity may be "acknowledged or established" for purposes of applying ICWA, however—and while the Bureau of Indian Affairs (BIA) has acknowledged this omission, it declined to adopt a federal standard when it issued ICWA regulations in 2016. Instead, the BIA's comments accompanying the final regulations explained as follows: "The final rule mirrors the statutory definition and does not provide a Federal standard for acknowledgment or establishment of paternity. The Supreme Court and subsequent case law has already articulated a constitutional standard regarding the rights of unwed fathers, see *Stanley v. Illinois*, 405 U.S. 645 (1972); *Bruce L. v. W.E.*, 247 P.3d 966, 978–979

---

[2]    In full, 25 United States Code section 1903(9) provides: " '[P]arent' means any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom. It does not include the unwed father where paternity has not been acknowledged or established."

(Alaska 2011) (collecting cases)—that an unwed father who 'manifests an interest in developing a relationship with [his] child cannot constitutionally be denied parental status based solely on the failure to comply with the technical requirements for establishing paternity.' *Bruce L.*, 247 P.3d at 978-79. Many State courts have held that, for ICWA purposes, an unwed father must make reasonable efforts to establish paternity, but need not strictly comply with State laws. *Id.* At this time, the Department does not see a need to establish an ICWA-specific Federal definition for this term." (Indian Child Welfare Act Proceedings, 81 Fed.Reg. 38796 (June 14, 2016).)

There is no suggestion in the record—and mother does not contend—that Kenneth has "manifest[ed] an interest in developing a relationship with" C.S. such that he cannot constitutionally be denied parental status. To the contrary, it appears undisputed that Kenneth did not support mother during her pregnancy, was not present at C.S.'s birth, and has never appeared in the dependency action to seek visitation with or custody of C.S. Indeed, it appears Kenneth has never met C.S. or tried to do so. For all of these reasons, Kenneth does not have a constitutionally protected interest in a relationship with C.S.

Nor has Kenneth acknowledged or established paternity under state law. (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708 [because ICWA does not provide a standard for the acknowledgment or establishment of paternity, "courts have resolved the issue under state law"]; *Office of Public Advocacy v. Superior Court* (Alaska 2020) 462 P.3d 1000, 1006 & fn. 37 [citing *In re Daniel M.*].) The framework for paternity determinations in California is set out in several provisions of the Welfare and Institutions Code and Family Code. As relevant here, these

provisions state that paternity may be established or acknowledged as follows:

  —Through the entry of a judgment of paternity by a court (Fam. Code, § 7636; § 316.2, subd. (a)(1));

  —By a voluntary declaration of parentage signed by an unmarried mother and a person identified by the mother "as either the only possible genetic parent other than the woman who gave birth or the intended parent of a child conceived through assisted reproduction" (Fam. Code, §§ 7571, subd. (a), 7573–7581; § 316.2, subd. (a)(5));

  —By the identification of a man as a genetic parent through genetic testing, if the identification is not successfully challenged (Fam. Code, §§ 7554, subd. (a), 7555; § 316.2, subd. (a)(6));

  —By legal presumption: Where a man and a child's birth mother married or attempted to marry, or a man "receive[d] the child into [his] home and openly [held] out the child as [his] natural child," he will be presumed to be the child's natural parent, subject to rebuttal "in an appropriate action . . . by clear and convincing evidence" (Fam. Code, § 7611, subds. (a)–(d), 7612, subd. (a); § 316.2, subds. (a)(2)–(4), (7).)

  —By an alleged father "[a]dmit[ting] parentage in a pleading, when making an appearance, or during a hearing," if the court "accepts the admission . . . and . . . determines that the person is a genetic parent of the child" (Fam. Code, § 7554, subd. (a); § 316.2, subd. (a)(5)).

  In the present case, Kenneth did not acknowledge or establish paternity in any of the ways prescribed by statute. He did not seek a judgment of paternity, sign a voluntary declaration of paternity, or submit to genetic testing. He is not married to

mother and he never received C.S. into his home or held C.S. out as his child. Further, Kenneth has not admitted parentage in a pleading, when making an appearance, or during a hearing. To the contrary, he has never made an appearance of any kind in this action despite being served with notice.

Notwithstanding Kenneth's failure to meet any of the statutory conditions for acknowledging or establishing paternity, mother contends Kenneth's claims of Cherokee ancestry triggered ICWA's inquiry and notice requirements because Kenneth allegedly "acknowledged" his paternity to the mother of his older children. However, mother cites no authority, and we are not aware of any, for the proposition that an informal acknowledgement of paternity to a third party makes Kenneth a "parent" for ICWA purposes.[3]

Mother further contends that we should not look to state law to define what it means to "acknowledge" or "establish" paternity for ICWA purposes because "the United States Supreme Court [has] specifically rejected the argument that a man did not qualify as a 'parent' under 25 U.S.C. § 1903(9) because he did not meet the definition for acknowledging or establishing paternity under [state] law." Not so: In *Adoptive Couple v. Baby Girl* (2013) 570 U.S. 637, 647, footnote 4, on which mother relies, the Supreme Court specifically declined to decide whether the father was a "parent." The court reached this

---

[3] Indeed, even were mother correct about the legal standard, the record does not support mother's assertion that Kenneth acknowledged paternity to the mother of his older children. While Kenneth told a CSW he had told his children's mother that he was C.S.'s "alleged father," nothing in his statement suggests he admitted being C.S.'s biological father.

9

conclusion, moreover, because it found that even if the biological father were a "parent," the provisions of ICWA governing termination of parental rights would not apply because he "had never had legal or physical custody of Baby Girl" (*id*. at p. 650)— a conclusion that, if applicable here, would require us to find that Kenneth's alleged biological paternity of C.S. is wholly irrelevant to the ICWA inquiry.

## DISPOSITION

The order terminating parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.

10