Filed 11/10/22  In re Leylani J. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re LEYLANI J., a Person Coming Under the Juvenile Court Law. | B317944 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP06515A) |
| Plaintiff and Respondent, | |
| v. | |
| BRIANNA E., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Commissioner. Affirmed.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Jane E. Kwon, Deputy County Counsel for Plaintiff and Respondent.

———————————————

Brianna E. (mother) appeals from a juvenile court order terminating parental rights to her daughter, Leylani J. She contends the order should be reversed because the responsible child protective agencies failed to comply with their duties of inquiry under the state laws (Welf. & Inst. Code, § 224 et seq.)[1] implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). We conclude the juvenile court did not prejudicially err by finding that ICWA does not apply, and thus we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Detention, jurisdiction, and disposition

Mother gave birth to Leylani in July 2019. Mother tested positive for marijuana and methamphetamines at the time of Leylani's birth, and the child was placed in protective custody upon her release from the hospital.

Mother identified two men, Abel J. and Freddy M., as Leylani's possible fathers. She admitted to periodic methamphetamine use and daily marijuana use during her

---

[1] All subsequent undesignated statutory references are to the Welfare and Institutions Code.

2

pregnancy, and said she had been using methamphetamines since she was 15 years old.  Mother's two older children were being cared for by her mother (the maternal grandmother) due to mother's drug use.

The Orange County Social Services Agency (SSA) filed a juvenile dependency petition in July 2019 pursuant to section 300, subdivisions (b) and (g).  The petition alleged that mother had an unresolved history of substance abuse and had tested positive for marijuana and amphetamines at the time of Leylani's birth.  An ICWA-010 form attached to the petition stated that an Indian child inquiry had been made of mother, who denied Indian ancestry.

Mother, accompanied by maternal relatives, appeared at the July 23, 2019 detention hearing and was appointed counsel.  She signed an ICWA-020 form in which she denied any Indian ancestry, and the court "heard statements of counsel as to issues of American Indian Heritage."  The court noted that mother "denies any American Indian Heritage."  It deferred making ICWA findings, however, pending a determination of paternity.

In August 2019, Abel J. was excluded as a possible biological father through a paternity test, and Freddy M. (hereafter, father) was found to be Leylani's presumed father.  Leylani was placed with her paternal grandmother, Maria P., in August 2019.  Maternal grandmother Susie T. and maternal aunt Janelle B. assisted the paternal grandmother with childcare.

In October 2019, the juvenile court sustained the allegations of the petition and ordered Leylani removed from her parents.  Mother was granted reunification services; father, who was incarcerated and declined to make an appearance, was not.  The court found that ICWA did not apply.  It then ordered the

3

case transferred from Orange County to Los Angeles County, where mother was then living.

## II.   Termination of mother's reunification services and of parental rights

Mother completed a six-month substance abuse treatment program in February 2020, but struggled with her sobriety in late 2020 and 2021, missing scheduled drug tests and testing positive for drugs.  She visited Leylani inconsistently, supervised by the maternal grandmother, maternal aunt, or paternal grandmother.  She identified the maternal grandmother as an important source of support for her.

In 2020 and 2021, mother gave birth to two more children, for whom the Los Angeles County Department of Children and Family Services (DCFS) initiated dependency proceedings.  Mother signed ICWA-020 forms in those proceedings denying Indian ancestry.[2]

Father made his first court appearance on February 5, 2021, at which time he signed an ICWA-020 form denying any Indian ancestry.  In March 2021, the paternal grandmother denied Indian ancestry in father's family.

The maternal grandmother passed away in February 2021.  In April 2021, DCFS reported that the paternal grandmother was willing to adopt Leylani.

The court terminated mother's reunification services on May 8, 2021, after it concluded that mother was unlikely to reunify with Leylani in the next period of supervision.  Parental

---

[2]      DCFS filed a request for judicial notice of the ICWA-020 forms and minute orders filed in the half-siblings' cases on August 25, 2022.  The request for judicial notice is granted.

rights were terminated on November 29, 2021. Mother timely appealed.

## DISCUSSION

Mother concedes the ICWA inquiry was adequate as to father's family, but she urges that SSA and DCFS (collectively, the agencies) failed to properly investigate her own possible Indian ancestry because they did not conduct an ICWA inquiry of members of her extended family—specifically, of the maternal grandmother and maternal aunt. She thus urges the order terminating parental rights should be conditionally reversed and the matter remanded to the juvenile court for further compliance with ICWA.

## I. Legal standards

### A. ICWA

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.)

"Juvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see also *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).) An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian

tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of "Indian child"].)

The affirmative duty to inquire has several elements. If a child is removed from his or her parents and placed in the custody of a county welfare agency, the agency must inquire whether a child is an Indian child. Such inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).) The court also must make an ICWA inquiry when the parents first appear in court: The court "shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)), and must require each party to complete California Judicial Council Form ICWA-020, Parental Notification of Indian Status (Cal. Rules of Court, rule 5.481(a)(2)(C)).

If the court or social worker has "reason to believe that an Indian child is involved in a proceeding," the court or social worker must "make further inquiry regarding the possible Indian status of the child" by, among other things, interviewing the parents and extended family members, and contacting any tribe that may reasonably be expected to have information about the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(2).) There is "reason to believe" a child involved in a proceeding is an Indian child whenever the court or social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

6

If the agency's inquiry creates a "reason to know" that an Indian child is involved, notice of the proceedings must be provided to the identified tribe or tribes.  (§ 224.2, subd. (f).)  There is "reason to know" a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child "is an Indian child," the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe.  (§ 224.2, subd. (d).)  Thereafter, the court shall confirm that the agency used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership.  (§ 224.2, subd. (g).)  A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe "shall be conclusive."  (§ 224.2, subd. (h).)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child," the court may make a finding that ICWA does not apply to the proceedings, "subject to reversal based on sufficiency of the evidence."  (§ 224.2, subd. (i)(2).)

### B.    Standard of review

As noted above, section 224.2, subdivision (i)(2) sets out two statutory predicates to a juvenile court's finding that ICWA does not apply.  First, the court must determine whether there is "reason to know" whether the child is an Indian child.  Second, the court must decide whether a "proper and adequate further

7

inquiry and due diligence as required in this section have been conducted."  If the court finds an adequate inquiry has been conducted and there is no reason to know a child is an Indian child, "the court may make a finding that the federal Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) does not apply to the proceedings."  (§ 224.2, subd. (i)(2).)

The first element—whether there is reason to know whether the child is an Indian child—requires the juvenile court to determine, based on the evidence before it, whether any one of six statutory criteria is met—e.g., (1) the court has been advised that the child "is an Indian child," (2) the child's or parent's residence is on a reservation, (3) any participant in the proceeding informs the court that it has discovered information indicating the child is an Indian child, (4) the child gives the court reason to know that he or she is an Indian child, (5) the child is or has been a ward of a tribal court, or (6) either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe.  (§ 224.2, subd. (d).)  If none of these six factors is met, the court must make a finding that there is no reason to know the child is an Indian child.  Because this determination is fundamentally factual, we review it for substantial evidence.  (*In re Caden C.* (2021) 11 Cal.5th 614, 639–640 (*Caden C.*) [factual determinations reviewed for substantial evidence]; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1005; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re D.F.* (2020) 55 Cal.App.5th 558, 565.)  In other words, we "should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts,' " but should uphold the lower court's determinations " 'if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and

the trial court might have reached a different result had it believed other evidence.' " (*Caden C.*, at p. 640; *In re J.N.* (2021) 62 Cal.App.5th 767, 774; *In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

The second element—whether a "proper and adequate further inquiry and due diligence as required in this section have been conducted" (§224.2, subd. (i)(2))—is somewhat different. Deciding whether an inquiry was "adequate" and an agency acted with appropriate diligence requires more of a court than simply applying a statutory checklist to undisputed facts. Instead, it requires the court to "engage in a delicate balancing" (see *In re Caden C.*, *supra*, 11 Cal.5th at p. 640) to assess whether an ICWA inquiry was appropriate and sufficient in light of the facts of a particular case. In short, the statute directs the juvenile court to perform a quintessentially discretionary function, and thus we review it for abuse of discretion. (*In re Ezequiel G.*, *supra*, 81 Cal.App.5th at pp. 1004–1005.)

If we conclude that the trial court erred in finding that an adequate ICWA inquiry was conducted, we will return the case to the juvenile court only if the error was prejudicial—that is, if "the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.) For this purpose, the "record" includes both the record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal. (*Ibid.*) As our colleagues in Division Two have recently explained, this test is "outcome focused," asking whether "it is reasonably probable that an agency's error

9

in not conducting a proper initial inquiry affected the correctness (that is, the *outcome*) of the juvenile court's ICWA finding," and remanding only in those cases "in which the record gives the reviewing court a reason to believe that the remand may undermine the juvenile court's ICWA finding." (*Id*. at pp. 781–782, italics added.)

## II. The juvenile court did not prejudicially err in finding Leylani is not an Indian child and ICWA does not apply to this case

Although mother denied Indian ancestry below, she contends on appeal that the agencies' failure to make an ICWA inquiry of her extended family was reversible error. We disagree.

As to the first element of the ICWA finding, we conclude that substantial evidence unquestionably supported the juvenile court's finding that there is no reason to know Leylani is an Indian child on mother's side. SSA made an initial ICWA inquiry before filing the petition, and it attached to the petition an ICWA-010 form attesting that an Indian child inquiry had been made of mother and she had no known Indian ancestry. Subsequently, mother signed an ICWA-020 form in which she stated, under penalty of perjury, that she did not have Indian ancestry. Further, mother appeared with counsel at the July 2019 detention hearing where, in the presence of maternal relatives, she denied Indian ancestry. And, she consistently denied Indian ancestry in Leylani's siblings' cases in January and August 2021, at which time she was advised to keep the court aware of any new information relating to Indian ancestry. Despite these repeated advisements, at no point—including now, on appeal—has mother suggested her denial of Indian ancestry was inaccurate, and no member of mother's extended family has

10

ever told DCFS that Leylani has Indian ancestry on mother's side.  Accordingly, all the evidence before the juvenile court required the conclusion that there was no reason to know Leylani is an Indian child through mother's family.

As to the second element of the ICWA finding, we conclude the juvenile court did not abuse its discretion in concluding that the agencies conducted an adequate inquiry.  In reviewing a juvenile court's ICWA findings for abuse of discretion, the key question for a reviewing court is whether the ICWA investigation has reliably answered the question at the heart of the ICWA inquiry:  Whether a child involved in a proceeding "is or may be an Indian child" (§ 224.2, subd. (a))—that is, whether he or she either (a) "is a member of an Indian tribe" or (b) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903, subd. (4); see also § 224.1, subds. (a)–(b).)  In other words, the focus of the court's analysis is not on the number of individuals interviewed, but on whether the agency's ICWA inquiry has yielded reliable information about a child's possible tribal affiliation.  (*In re Ezequiel G.*, *supra*, 81 Cal.App.5th 1009.)

As we recently explained, " 'ICWA does not apply simply based on a child or parent's Indian ancestry.' " (*In re Ezequiel G.*, *supra*, 81 Cal.App.5th 1009, citing U.S. Dept. of Interior, Bureau of Indian Affairs, Guidelines for Implementing the Indian Child Welfare Act (Dec. 2016) (BIA Guidelines), p. 10 <https://www.bia.gov/sites/default/files/dup/assets/bia/ois/pdf/idc2-056831.pdf> [as of August 1, 2022], archived at <https://perma.cc/X4FM-FHXE>.)  Instead, "the definition of 'Indian child,' . . . is based on the child's *political ties* to a federally recognized Indian Tribe, either by virtue of the child's

11

own citizenship in the Tribe, or through a biological parent's citizenship and the child's eligibility for citizenship." (Indian Child Welfare Act Proceedings, 81 Fed.Reg. 38795 (June 14, 2016) (BIA ICWA Proceedings), italics added.) In other words, an Indian child is one with a *tribal affiliation*, not merely Indian ancestry.

"Tribal citizenship (aka Tribal membership) is voluntary and typically requires *an affirmative act* by the enrollee or her parent." (BIA ICWA Proceedings, *supra*, 81 Fed.Reg. at p. 38783.) Specifically, "Tribal laws generally include provisions requiring the parent or legal guardian of a minor *to apply for* Tribal citizenship on behalf of the child. [Citation.] Tribes also often require an affirmative act by the individual seeking to become a Tribal citizen, such as the filing of an application. [Citation.] As ICWA is limited to children who are either enrolled in a Tribe or are eligible for enrollment and have a parent who is an enrolled member, *that status inherently demonstrates an ongoing Tribal affiliation*." (*Ibid*., italics added; see also BIA Guidelines, *supra*, at p. 10 ["Most Tribes require that individuals apply for citizenship and demonstrate how they meet that Tribe's membership criteria."].) Because membership in an Indian tribe therefore requires that an individual or his or her parent *apply* for tribal membership, a child's parents will, in most cases, be the best source of information for determining whether a child is an Indian child.

In the present case, nothing in the record gives us reason to doubt the accuracy of mother's denial of a tribal affiliation. Each of the parents unequivocally denied Indian ancestry, and mother has not identified any evidence in the record that would support an inference that she might unknowingly be a member of an

12

Indian tribe. (See *Ezequiel G., supra*, 81 Cal.App.5th at p. 1015.) Indeed, the evidence is to the contrary. Maternal relatives were present at the July 2019 detention hearing at which mother denied Indian ancestry, and there is no indication that any relative contradicted mother's statement. Further, mother remained close with her mother and sister throughout these proceedings, and the maternal grandmother and maternal aunt monitored mother's visits with Leylani, participated in child and family team meetings, and assisted the paternal grandmother with childcare. Indeed, mother identified the maternal grandmother as her most important source of support. In view of mother's relationship with her extended family, the possibility that she might unknowingly be a member of a tribe appears trivially small. The juvenile court therefore did not abuse its discretion by concluding that DCFS conducted an adequate ICWA inquiry as to mother.

For all the same reasons, even if the juvenile court erred by finding DCFS's inquiry adequate, that error was not prejudicial because it is not "reasonably probable that an agency's error in not conducting a proper initial inquiry affected the correctness (that is, the *outcome*) of the juvenile court's ICWA finding." (*In re Dezi C., supra*, 79 Cal.App.5th at p. 781, italics added.) As we have said, nothing in the juvenile court record gives us a reason to doubt the accuracy of mother's denial that she or Leylani were members of or eligible for membership in an Indian tribe, and she has not made a proffer on appeal that she has Indian heritage.

We note, finally, that consideration of ICWA's placement preferences further bolsters our finding of no prejudice. Section 1915 of title 25 of the United States Code provides that in any adoptive placement of an Indian child under state law, "a

13

preference shall be given, in the absence of good cause to the contrary, to a placement with [¶] (1) a member of the child's extended family; [¶] (2) other members of the Indian child's tribe; or [¶] (3) other Indian families."  (25 U.S.C. § 1915(a).)  Here, the juvenile court implemented the first placement preference by finding Leylani adoptable by her paternal grandmother.  (See *In re J.W.* (2022) 81 Cal.App.5th 384, 391 [child's placement with extended family member, consistent with ICWA placement preferences, bolstered appellate court's conclusion that an ICWA inquiry error was not prejudicial].)

No remand therefore is warranted.

## DISPOSITION

The order terminating parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

I concur:

EGERTON, J.

15

LAVIN, J., Dissenting:

For the reasons set forth in my dissent in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015–1025, I would conditionally affirm the order and remand for further proceedings.


LAVIN, J.

1