Filed 9/12/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MICHAEL V. et al., Persons Coming Under the Juvenile Court Law. | B268149 |
| | (Los Angeles County Super. Ct. No. DK02646) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| KRISTINA C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Zeke D. Zeidler, Judge.  Conditionally affirmed and remanded with directions.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Julia Roberson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Kristina C., the mother of five-year-old Alissa M. and two-year-old K.C., appeals the juvenile court's September 29, 2105 order terminating her parental rights and identifying adoption as the permanent plan for her two daughters. Kristina contends the court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We agree the Department failed to adequately investigate Kristina's claim of Indian ancestry, remand the matter to allow the Department and the juvenile court to fully comply with ICWA and related California law and otherwise conditionally affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Dependency Proceedings Leading to Termination of Kristina's Parental Rights to Alissa and K.C.*

Both Kristina and K.C. tested positive for methamphetamine immediately after K.C.'s birth in December 2013. On June 2, 2014 the court sustained a petition filed pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] alleging Kristina had a history of alcohol and illicit drug abuse and was a current user of methamphetamine, which rendered her incapable of providing regular care for her two daughters and their older brother, Michael, who was then six years old.[2] The court also sustained the allegation that Kristina had, on prior occasions, been under the influence of methamphetamine while the children were in her care, endangering their physical health and safety. At the disposition hearing on August 4, 2015 the court declared the children dependents of the court, ordered Michael placed with his paternal great-grandmother and the two other children suitably placed and ordered family reunification services for Kristina, including a full drug and alcohol program with testing and aftercare, parenting

---

[1]    Statutory references are to this code unless otherwise stated.

[2]    Michael was subsequently placed in a legal guardianship with his paternal great-grandmother. The September 29, 2015 order terminating parental rights at issue in this appeal does not apply to him.

2

classes and individual counseling to address case issues. Reunification services were also ordered for Alissa's presumed father, but not for K.C.'s alleged (biological) father.

At the six-month review hearing (§ 366.21, subd. (e)), held on May 18, 2015, the court found that Kristina was only in partial compliance with her case plan and Alissa's father was not in compliance with his case plan. The court ordered family reunification services terminated and set a selection and implementation hearing (§ 366.26) for September 29, 2015.

The court conducted a contested hearing pursuant to section 366.26 on September 29, 2015. Kristina testified, and her counsel argued she had established the parent-child relationship exception to termination of parental rights (§ 366.26, subd. (c)(1)(B)(i)). After considering the evidence and argument of counsel, the court found by clear and convincing evidence that the return of Alissa and K.C. to their parents would be detrimental and that the children were adoptable. The court also found, although Kristina had regular, consistent visitation with the children, she had not occupied a parental role in their life and the benefit to the children of permanency through adoption outweighed the benefit of an ongoing relationship with Kristina. Accordingly, the court terminated Kristina's and the two fathers' parental rights and transferred care, custody and control of the children to the Department for adoptive planning and placement.[3]

---

[3] After terminating parental rights and identifying adoption as the children's permanent plan on September 29, 2015, the court denied as moot Kristina's section 388 petition to liberalize visitation, filed on September 16, 2015. Several days earlier the court had denied those portions of the section 388 petition requesting a home-of-parent order or the reinstatement of reunification services because Kristina had not presented any new evidence or change of circumstances and the proposed modifications would not, in any event, be in the best interest of the children. Although Kristina's notice of appeal identifies both the September 29, 2015 order terminating parental rights and the order denying her section 388 petition, her appellate brief challenges the ICWA ruling only as it relates to the termination order. (See *Tellez v. Rich Voss Trucking, Inc.* (2015) 240 Cal.App.4th 1052, 1066 ["[o]n appeal we need address only the points adequately raised by plaintiff in his opening brief on appeal"].)

2. *Investigation of Kristina's Claim of Indian Ancestry and the Finding ICWA Did Not Apply*

The detention reported filed December 11, 2013 states ICWA does not apply and explains, "On 12/07/13, mother, Kristina C[.], denied any American Indian Ancestry." The section 300 petition, filed the same date, included a Judicial Council form ICWA-010(A), Indian Child Inquiry Attachment, for each of Kristina's three children, completed by the children's social worker who had prepared the detention report. Each form also states "mother denied any American Indian Ancestry." (The material filed on December 11, 2013 stated Michael's paternal great-grandmother denied any American Indian ancestry, but provided no information concerning possible Indian ancestry of the fathers of the two other children.)

In connection with her appearance at the detention hearing on December 11, 2013, however, Kristina filed a form ICWA-020, Parental Notification of Indian Status, in which she stated she "may have Indian ancestry through MGM," that is, through her mother, the children's maternal grandmother. At the hearing the court described the statement on the ICWA-020 form, learned that the woman in court with Kristina was a paternal aunt, and then asked, "Who told you you may have Indian ancestry?" Kristina, who was then 22 years old, responded, "When I was, like, going through court for myself, like, my social worker, she was looking up my mom because she's never, like, a part of my life. So they were trying to track her down. And when they did, they told me she was full-blood Indian. And they tried seeing if I could get services for that, but they said something about, like, the number." The court inquired further, "When the social worker started looking into your Indian ancestry, what did the social worker find?" Kristina answered, "That she was from two tribes." The court asked, "And what were the tribes?" Kristina responded, "I don't remember."

The court ordered the Department to investigate Kristina's Indian ancestry, to provide notice to the tribes if ICWA was triggered and to include details regarding its ICWA inquiry in the social study report. The court then ruled, "At this point, the court

4

does not have reason to know or believe that the child is an Indian child as defined by the Indian Child Welfare Act. The Indian Child Welfare Act does not apply."

The jurisdiction/disposition report prepared for the March 18, 2014 jurisdiction hearing was received by the court on February 27, 2014. The report stated that Kristina had been interviewed on February 24, 2014 regarding her knowledge of the family's ancestry. The report quoted Kristina's comment, "My social worker from LA told me my mom was full blooded and from 2 tribes, but I don't remember. This was about 7 years ago." Kristina explained she had been placed in foster homes, provided services and eventually emancipated from the system. The report stated the records from Kristina's dependency case were searched, and there was no indication the family had Indian ancestry and no information was found as to the names of possible tribes. Alissa's father was interviewed, and he stated he did not have Indian ancestry. The report reiterated Michael's paternal great-grandmother had previously stated her family had no American Indian ancestry.

In another section of the report, the Department briefly described Kristina's childhood, noting she was raised by her paternal grandparents because both of her parents were methamphetamine users. Kristina stated she had two siblings. Her grandmother died when she was 13 years old, at which point she apparently became a dependent of the court because she kept running away from her father and her aunt. Kristina also said she believed her mother was currently living in San Diego.

At a status hearing on February 28, 2014 the court asked if any party wanted to be heard regarding the ICWA investigation. No one responded. The court found the ICWA investigation had been completed. It again ruled it had no reason to know or believe the children were Indian children as defined by ICWA and concluded ICWA did not apply.

With respect to ICWA the Department's report prepared for the section 366.26 hearing, dated August 27, 2015, stated only, "On 02/28/2014 the court found that ICWA does not apply." There was no mention of ICWA at the September 29, 2015 hearing at which the court terminated Kristina's parental rights as to Alissa and K.C.

5

**DISCUSSION**

1. *The ICWA Inquiry and Notice Requirements*

ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8; *In re W.B.* (2012) 55 Cal.4th 30, 47.) For purposes of ICWA, an "Indian child" is a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); see § 224.1, subd. (a) [adopting federal definitions].)[4]

As the Supreme Court recently explained, notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the matter. (*In re Isaiah W.*, *supra*, 1 Cal.5th at pp. 8-9.) Notice to the parent or Indian custodian and the Indian child's tribe is required by ICWA in state court proceedings seeking foster care placement or termination of parental rights "where the court knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a).) Similarly, California law requires notice to the parent, legal guardian or Indian custodian and the Indian child's tribe in accordance with section 224.2, subdivision (a)(5), if the Department or court "knows or has reason to know that an Indian child is involved" in the proceedings. (§ 224.3, subd. (d); see Cal. Rules of Court, rule 5.481(b)(1) [notice is required "[i]f it is known or there is reason to know that an Indian child is involved in a proceeding listed in rule 5.480," which includes all dependency cases filed under Welfare and Institutions Code section 300].)

---

[4] In 2006, to increase compliance with ICWA, the California Legislature passed Senate Bill No. 678 (2005-2006 Reg. Sess.), codifying and elaborating on ICWA's requirements through revisions to several provisions of the Family, Probate and Welfare and Institutions Codes. (See *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 9; *In re W.B., supra,* 55 Cal.4th at p. 52; see also § 224, subd. (a).)

If the court has reason to know an Indian child may be involved in the pending dependency proceeding but the identity of the child's tribe cannot be determined, ICWA requires notice be given to the federal Bureau of Indian Affairs (BIA) (25 U.S.C. §§ 1903(11), 1912(a)); see *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 8.) California law reinforces this requirement: Section 224.2, subdivision (a)(4), provides, "Notice, to the extent required by federal law, shall be sent to the Secretary of the Interior's designated agent, the Sacramento Area Director, Bureau of Indian Affairs." In addition, the California statute requires any notice sent to the child's parents, Indian custodians or tribe to "also be sent directly to the Secretary of the Interior" unless the Secretary has waived notice in writing. (§ 224.2, subd. (a)(4); *In re Isaiah W.*, at p. 9.)

The circumstances that may provide reason to know the child is an Indian child include, without limitation, when a person having an interest in the child, including a member of the child's extended family, "provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1); see *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 15 ["section 224.3, subdivision (b) sets forth a nonexhaustive list of 'circumstances that may provide reason to know the child is an Indian child'"]; Cal. Rules of Court, rule 5.481(a)(5)(A) [containing language substantially identical to that in § 224.3, subd. (b)(1)]; see also *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1386-1387 & fn. 9 [because only the tribe may make the determination whether the child is a member or eligible for membership, there is no general blood quantum requirement or "remoteness" exception to ICWA notice requirements]; *In re B.H.* (2015) 241 Cal.App.4th 603, 606-607 ["a person need not be a *registered* member of a tribe to be a member of a tribe—parents may be unsure or unknowledgeable of their own status as a member of a tribe"].)

Importantly for our purposes, the burden of coming forward with information to determine whether an Indian child may be involved and ICWA notice required in a dependency proceeding does not rest entirely—or even primarily—on the child and his or

her family.  Juvenile courts and child protective agencies have "an affirmative and continuing duty to inquire" whether a dependent child is or may be an Indian child. (§ 224.3, subd. (a); *In re Isaiah W., supra*, 1 Cal.5th at pp. 9, 10-11; see Cal. Rules of Court, rule 5.481(a); see also *In re W.B.*, *supra*, 55 Cal.4th at pp. 52-53.)  This affirmative duty to inquire is triggered whenever the child protective agency or its social worker "knows or has reason to know that an Indian child is or may be involved . . . ." (Cal. Rules of Court, rule 5.481(a)(4).)  At that point, the social worker is required, as soon as practicable, to interview the child's parents, extended family members, the Indian custodian, if any, and any other person who can reasonably be expected to have information concerning the child's membership status or eligibility.  (§ 224.3, subd. (c); Cal. Rules of Court, rule 5.481(a)(4)(A); see *In re Kadence P.*, *supra*, 241 Cal.App.4th at p. 1386; *In re Shane G.* (2008) 166 Cal.App.4th 1532, 1539.)

> 2. *The Department Did Not Adequately Investigate Kristina's Claim of Indian Ancestry*

> a. *The issue of ICWA compliance is properly before this court*

As discussed, the juvenile court ruled ICWA did not apply to this dependency proceeding on December 11, 2013 and February 28, 2014.  Emphasizing that Kristina has appealed only from the juvenile court's order of September 29, 2015 terminating her parental rights as to Alissa and K.C., not either of those earlier orders, the Department contends we lack jurisdiction to consider the ICWA issue and Kristina's appeal should be dismissed.

The Department's argument is directly refuted by the Supreme Court's recent decision in *In re Isaiah W.*, *supra*, 1 Cal.5th 1, which held a parent who did not file a timely appeal from a juvenile court order that included a finding of ICWA's inapplicability may nonetheless challenge such a finding by appealing from a subsequent order terminating parental rights.  (*Id.* at p. 6.)  The Supreme Court explained the juvenile court has "a *continuing* duty" to inquire whether the child before it is an Indian child "in all dependency proceedings, including a proceeding to terminate parental rights."  (*Id.* at p. 10.)  In light of that continuing duty, an order terminating the mother's parental rights

8

"was necessarily premised on a *current* finding by the juvenile court that it had no reason to know [the child] was an Indian child and thus ICWA notice was not required." (*Ibid.*) In *In re Isaiah W.* that finding was explicitly made during the section 366.26 hearing. (*In re Isaiah W.*, at p. 10.) Here, that essential finding was implicit in the court's order terminating parental rights, grounded on its earlier ICWA rulings, which were identified in the Department's section 366.26 report. (See *In re Asia L.* (2003) 107 Cal.App.4th 498, 506 [juvenile court is not required to make an express finding that ICWA does not apply; "its finding may be either express or implied"]; cf. *In re Zacharia D*. (1993) 6 Cal.4th 435, 456 [recognizing implied findings in dependency proceedings].) As in *In re Isaiah W.*, Kristina's appeal, properly understood, does not challenge the juvenile court's December 11, 2013 and February 28, 2014 findings of ICWA inapplicability, but the implied finding of ICWA inapplicability underlying the September 29, 2015 order terminating her parental rights. (See *In re Isaiah W.*, at p. 15.)

   b. *The Department apparently made no affirmative effort to inquire about the children's possible Indian ancestry by contacting members of Kristina's family*

  Kristina's principal argument on appeal is that her social worker's comments when she was a dependent of the court about her mother's Indian ancestry triggered ICWA's notice requirements and it was, therefore, error for the juvenile court not to order the Department to notify the BIA of the dependency proceedings. We agree with the Department that Kristina's recollection of what she had been told seven years earlier, coupled with the absence of any corroborating information in the records from her dependency case, was insufficient without further substantiation to require notice to the BIA. (See, e.g., *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467 [mother's inability to identify tribe or nation and failure to provide any contact information to substantiate her unsupported belief insufficient to invoke ICWA; family lore alone is insufficient to give court reason to know a child is an Indian child]; *In re O.K.* (2003) 106 Cal.App.4th 152, 157 [grandmother's statement that child "'may have Indian in him,'" without more, insufficient to invoke ICWA notice requirements]; see also *In re Jeremiah G.* (2009)

172 Cal.App.4th 1514, 1520 ["more than a bare suggestion that a child might be an Indian child" is required to trigger ICWA notice requirements].)[5]

But Kristina also contends the investigation of her Indian ancestry conducted by the Department was inadequate. We agree. (See *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1200 ["the duty to inquire is triggered by a lesser standard of certainty regarding the minor's Indian child status . . . than is the duty to send formal notice to the Indian tribes"].) The Department, as well as the court, has an affirmative obligation "to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable by interviewing the parents, Indian custodian, and extended family members" (§ 224.3, subd. (c); see Cal. Rules of Court, rule 5.481(a)(4)(A)) if a person having an interest in the child "provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe" (§ 224.3, subd. (b)(1); see Cal. Rules of Court, rule 5.481(a)(5)(A)). Kristina did precisely that, suggesting Alissa and K.C.'s maternal grandmother was a member of two Indian tribes in answer to questions from the court. Although the court then ordered the Department to investigate the children's possible Indian ancestry, the Department did not take appropriate affirmative steps to do so; and the court failed to ensure that an adequate investigation had been conducted.

To be sure, following Kristina's statements to the court that she had been told by a social worker that her mother was a full-blooded Indian, the Department reinterviewed Kristina and checked its own records but could not find any information that confirmed Kristina's recollection. Then, notwithstanding the express requirements of section 224.3 and rule 5.481, it did nothing more. The Department made no effort to locate the children's maternal grandmother to interview her even though it was she who reportedly

---

[5] When the facts are undisputed, we review independently whether ICWA requirements have been satisfied. (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254.)

10

had the direct link to a tribe.  (Kristina had said her mother might be living in San Diego, thus giving the Department at least a starting place for its inquiry.)  Moreover, although Kristina said she had two siblings, the Department did not attempt to interview them, nor does it appear a social worker even asked Kristina their names or where they lived.  In addition, while the children's paternal relatives, including Alissa's father, indicated there was no Indian ancestry on their side of the family, the Department did not inquire whether they might have any information regarding Alissa and K.C.'s possible Indian ancestry through their mother.

The Department's brief in this court reflects its misunderstanding of its duty to meet ICWA's requirements.  The Department attempts to defend its investigation by asserting, "Mother's paternal aunt, who was present at the detention hearing, also never spoke up to indicate mother's paternal family believed mother might have Indian heritage."  It was not the paternal great-aunt's obligation to speak up; it was the Department's obligation to inquire, an affirmative and continuing duty imposed by both ICWA and California law.  (See *In re Isaiah W.*, *supra*, 1 Cal.5th at pp. 10-11.)

We remand the matter for the juvenile court to direct the Department to conduct a meaningful investigation into Kristina's claim of Indian ancestry, including making genuine efforts to locate other family members who might have information bearing on the children's possible Indian ancestry.  If that investigation produces any additional information substantiating Kristina's claim, notice must be provided to any tribe that is identified or, if the tribe cannot be determined, to the BIA.  The Department shall thereafter notify the court of its actions and file certified mail return receipts for any ICWA notices that were sent, together with any responses received.  The court shall then determine whether the ICWA inquiry and notice requirements have been satisfied and whether Alissa and K.C. are Indian children.  If the court finds they are Indian children, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If not, the court's original section 366.26 order remains in effect.

11

## DISPOSITION

The section 366.26 order of the juvenile court is conditionally affirmed.  The matter is remanded to the juvenile court for compliance with the inquiry and notice provisions of ICWA and related California law as set forth above and for further proceedings not inconsistent with this opinion.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.


12