Filed 12/8/22  In re N.R. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.R. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.R. et al.,<br><br>    Defendant and Appellant. | F084250<br><br>(Super. Ct. No. 20CEJ300017-2)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Todd Eilers, Commissioner.

Suzanne M. Nicholson, under appointment by the Court of Appeal, for Defendant and Appellant Mother.

Karen J. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Father.

Daniel C. Cederborg, County Counsel, and Carlie Flaugher, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

An. R. (Mother) and As. R. (Father) are the parents of N.R., now eight years old. In 2020, N.R. was taken into protective custody after his elementary school reported possible physical abuse by Father.[1] N.R. was subsequently made a dependent of the juvenile court under Welfare and Institutions Code section 300, subdivisions (b)(1) and (c).[2] Mother and Father both appeal the juvenile court's order terminating their parental rights under section 366.26.[3]

Mother's and Father's sole claim is that the Fresno County Department of Social Services/Child Welfare Services (the Department) and the juvenile court failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law with respect to the duty of inquiry, and that remand for an adequate inquiry is required.[4] The Department does not dispute that only Mother and Father were asked about Indian ancestry, but it argues the error was harmless.

As explained herein, the Department's ICWA inquiry, which did not extend to anyone beyond Mother and Father, was inadequate under state law. (§ 224.2, subds. (b), (e).)[5] As a result, the juvenile court's finding that ICWA does not apply is unsupported

---

[1] N.R.'s older half-sister, V.W., was also taken into protective custody, but she turned 18 years old during the pendency of this proceeding and the issues raised on appeal pertain only to N.R.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[3] Section 366.26 was amended by Assembly Bill No. 2711 (2021–2022 Reg. Sess.), effective January 1, 2023, but the amendment is not relevant to the issue raised on appeal.

[4] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[5] Section 224.2, subdivision (k), was amended, effective January 1, 2023, to provide for telephonic or other remote means of participation by an Indian child's tribe. (Assem. Bill No. 2960 (2021–2022 Reg. Sess.).) This amendment is not relevant to our resolution of Mother's appeal.

by substantial evidence of a proper, adequate, and duly diligent inquiry and the court abused its discretion in concluding otherwise. (§ 224.2, subd. (i)(2); *In re K.H.* (2022) 84 Cal.App.5th 566, 589–590 (*K.H.*); accord, *In re E.C.* (2022) 85 Cal.App.5th 123, 134 (*E.C.*).) Moreover, the error is prejudicial and requires reversal for correction.

As we explained in our recent decisions in *K.H.* and *E.C.*, "while we generally apply a *Watson*[6] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm." (*K.H., supra*, 84 Cal.App.5th at p. 609, italics omitted, citing *In re A.R.* (2021) 11 Cal.5th 234, 252–253 (*A.R.*); accord, *E.C., supra*, 85 Cal.App.5th at pp. 153–154.) "[W]here the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H., supra*, at p. 609, citing *A.R., supra*, at p. 252; accord, *E.C., supra*, at p. 154.) Error under ICWA and related California law presents such an exception, and determining whether an error in this context is prejudicial requires viewing the error through the lens of ICWA's remedial purpose. (*K.H., supra*, at p. 588, citing *A.R., supra*, at pp. 252–254; accord, *E.C., supra*, at p. 135.) These laws are intended to ensure the rights of Indian children and Indian tribes are protected in dependency proceedings by giving tribes concurrent jurisdiction and the right to intervene when the proceeding involves an Indian child. (*In re W.B.* (2012) 55 Cal.4th 30, 48 (*W.B.*), citing 25 U.S.C. § 1911(b)–(c) & *Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 36 (*Holyfield*).) "Many cases do not proceed beyond the inquiry stage in the ICWA compliance process and, therefore, ensuring adequacy and accuracy at this step is critical if the tribes' right to notice in proceedings that may involve an Indian child is to be meaningfully safeguarded, as was

---

**6**      *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).

intended by Congress and our state Legislature.  (*K.H., supra*, at p. 591, citing *A.R., supra*, at pp. 252–253.)"  (*E.C., supra*, at p. 135.)

As in *K.H.* and *E.C.*, "the error [here] is prejudicial because neither the [Department] nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue.  (*A.R., supra*, 11 Cal.5th at pp. 252–254.)  Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein."  (*K.H., supra*, 84 Cal.App.5th at p. 591; accord, *E.C., supra*, 85 Cal.App.5th at p. 135.)

## FACTUAL SUMMARY[7]

On January 13, 2020, N.R., then five years old, and V.W., then 16 years old, lived with Mother and Father, who are married and had no prior dependency history.  Law enforcement was contacted by N.R.'s elementary school because he had a red mark under his eye and said that Father hit him.

On January 15, 2020, the Department filed an original petition on behalf of N.R. and V.W. under section 300, subdivisions (a) and (b)(1).  The petition alleged N.R. suffered serious physical harm by Father (count a-1), V.W. was at risk of suffering serious physical harm by Father (count a-2), both children were at risk of suffering serious physical harm due to Mother's failure to adequately supervise and protect them from Father (count b-1), and both children were at risk of suffering serious physical harm due to Father's failure to adequately supervise and protect them (count b-2).

On January 16, 2020, the juvenile court held a detention hearing.  The court found a prima facie showing that N.R. and V.W. came within section 300, subdivisions (a) and

---

[7]     The sole issue on appeal is Mother's and Father's ICWA claim, and, therefore, a detailed summary of the facts is unnecessary.

4.

(b)(1), and ordered the children detained from Mother and Father. Both filed "PARENTAL NOTIFICATION OF INDIAN STATUS" forms (Judicial Council form ICWA-020 (ICWA-020)) denying Indian ancestry.

On June 15, 2020, the Department filed a first amended petition adding a third count under subdivision (b)(1) of section 300 based on domestic violence between Mother and Father (count b-3), and two counts under subdivision (c) for risk of severe emotional damage based on Mother's and Father's ongoing domestic violence (count c-1 (V.W.) and count c-2 (N.R.)).

On June 16, 2020, the Department filed a second amended petition indicating Mother's and Father's address was confidential.

On July 9, 2020, Mother and Father were arrested. Each was charged with one count of felony child abuse and one count of corporal injury to a child. Additionally, Mother was charged with one count of assault with a deadly weapon, which stemmed from an incident in which a boy, John Doe, rang the doorbell and ran. With Father in the passenger seat, Mother chased John Doe in her vehicle and ran him off the road, injuring him. In the criminal proceeding, the trial court issued a protective order for V.W., N.R., and John Doe.

As summarized in the Department's jurisdiction and disposition report dated September 14, 2020, V.W. did not want contact with Mother or Father, and, having been informed that her biological father was A.W. after the commencement of this proceeding, she was visiting with him by phone. N.R. was in his third placement due to extreme and impulsive behavior, including choking other children and an animal, and acting abusively toward V.W.

On October 21, 2020, the juvenile court held a jurisdiction and disposition hearing. After a lengthy discussion of the petition allegations and the evidence of physical abuse against both children developed through interviews and photographs taken in secret by V.W., the court found the allegations under section 300, subdivision (a), not

true but sustained the allegations under section 300, subdivisions (b)(1) and (c). The court declared the children dependents of the court, ordered them removed from Mother's and Father's physical custody under section 361, subdivision (c)(1), and ordered reunification services, subject to restrictions imposed by the criminal protective order. The court also found that ICWA did not apply.

A combined 6- and 12-month review hearing was held on February 21, 2021. An 18-month review hearing was held on September 28, 2021, and the court set a selection and implementation hearing.

On April 21, 2022, the juvenile court held a contested section 366.26 hearing. The Department's report, prepared in January 2022, reflected that new ICWA inquiries were made of Mother and Father on October 19, 2021, and both parents denied Indian ancestry. The Department requested a continued finding that ICWA does not apply. The Department reported that N.R. was generally adoptable but difficult to place due to ongoing behavioral and mental health issues, and specifically adoptable because his foster parents, with whom he had been living since April 2020, desired to adopt him. The court maintained all prior orders that were not modified, terminated Mother's and Father's parental rights, and selected a permanent plan of adoption for N.R.

Mother and Father each filed a timely notice of appeal.

## DISCUSSION

### I.     ICWA

#### A.     Background

"'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' (*W.B., supra*, 55 Cal.4th at p. 48, citing 25 U.S.C. § 1911(b)–(c) & *Holyfield, supra*, 490 U.S. at p. 36), furthering 'federal policy "'that, where possible, an Indian child should remain in the Indian community'"' (*W.B., supra*, at p. 48, quoting *Holyfield, supra*, at p. 37). 'ICWA establishes minimum federal standards, both procedural and substantive,

governing the removal of Indian children from their families' (*In re H.A.* (2002) 103 Cal.App.4th 1206, 1210; accord, *In re Desiree F.* (2000) 83 Cal.App.4th 460, 469; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421), and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding' (*In re K.T.* (2022) 76 Cal.App.5th 732, 741, citing 25 U.S.C. § 1911; accord, *In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*))." (*E.C., supra*, 85 Cal.App.5th at p. 138, fn. omitted; accord, *K.H., supra*, 84 Cal.App.5th at p. 594.)

"'In 2006, California adopted various procedural and substantive provisions of ICWA.' (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*), citing *In re Autumn K.* (2013) 221 Cal.App.4th 674, 703–704; accord, *W.B., supra*, 55 Cal.4th at p. 52; [*In re*] *T.G.* [(2020)] 58 Cal.App.5th [275,] 289–290.) The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. (Sen. Judiciary Com., Analysis of Sen. Bill No. 678 (2005–2006 Reg. Sess.) as amended Aug. 22, 2005, p. 6.)' (*W.B., supra*, at p. 52, italics added; accord, *In re Michael V.* (2016) 3 Cal.App.5th 225, 231–232, fn. 4.)

"'In 2016, new federal regulations were adopted concerning ICWA compliance. (81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. § 23 (2019).) Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. (Assem. Bill No. 3176 (2017–2018 Reg. Sess.); *In re A.W.* (2019) 38 Cal.App.5th 655, 662, fn. 3.) Those changes became effective January 1, 2019 ….' ([*In re*] *D.S., supra*, 46 Cal.App.5th at p. 1048, fn. omitted.) Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020. ([*In re*] T.*G., supra*, 58 Cal.App.5th at p. 290, fn. 14,

7.

citing Assem. Bill No. 2944 (2019–2020 Reg. Sess.) ch. 104, § 15, pp. 23–25.)" (*K.H., supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C., supra*, 85 Cal.App.5th at pp. 138–139.)

### B.     Summary of Duties of Inquiry and Notice

"Within the meaning of ICWA, federal and state law define an "'Indian child" [as] any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4); accord, Welf. & Inst. Code, § 224.1, subd. (a).)  In addition, state law provides, 'As used in connection with an Indian child custody proceeding, the term "Indian child" also means an unmarried person who is 18 years of age or over, but under 21 years of age, who is a member of an Indian tribe or eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe, and who is under the jurisdiction of the dependency court, unless that person or their attorney elects not to be considered an Indian child for purposes of the Indian child custody proceeding.  All Indian child custody proceedings involving persons 18 years of age and older shall be conducted in a manner that respects the person's status as a legal adult.' (§ 224.1, subd. (b).)" (*K.H., supra*, 84 Cal.App.5th at p. 596; accord, *E.C., supra*, 85 Cal.App.5th at p. 139.)

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the agency nor the court plays any role in making that determination.  ([*In re*] *T.G., supra*, 58 Cal.App.5th at p. 294; accord, *In re Rylei S.* (2022) 81 Cal.App.5th 309, 321, fn. 8 (*Rylei S.*).)  '"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case."'  ([*In re*] *Ricky R.* [(2022)] 82 Cal.App.5th [671,] 678, quoting [*In re*] *Benjamin M.* (2021)] 70 Cal.App.5th [735,] 741.) Under California law, '[j]uvenile courts and child protective agencies have "an affirmative and continuing duty to inquire" whether a child for whom a section 300

petition has been filed is or may be an Indian child.' (*In re N.G.* (2018) 27 Cal.App.5th 474, 481 (*N.G.*), citing § 224.3, subd. (a); accord, [*In re*] *T.G., supra*, at p. 290; *In re D.F.* (2020) 55 Cal.App.5th 558, 566.) As many courts have recognized, '[t]he ICWA investigatory process under state law is now expansive and potentially onerous.' (*In re S.H.* (2022) 82 Cal.App.5th 166, 174.)

"'The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry. (*In re T.G., supra*, 58 Cal.App.5th at p. 290.) ICWA also imposes a duty to provide notice of the proceedings to the pertinent Indian tribes. (25 U.S.C. § 1912(a); [Welf. & Inst. Code,] § 224.3, subd. (a).) Notice enables the tribes "to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter." (*In re T.G., supra*, 58 Cal.App.5th at p. 288.)' ([*In re*] *Ricky R., supra*, 82 Cal.App.5th at p. 678.)

"'The duty of initial inquiry applies in every dependency proceeding. (*In re Austin J.* (2020) 47 Cal.App.5th 870, 88[3]–88[4] (*Austin J.*).) Federal regulations require state courts to ask each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a) (2022).) State law requires the court to pursue an inquiry "[a]t the first appearance in court of each party" by asking "each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) In addition, when [it] takes a child into temporary custody, the agency must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child," and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); [Welf. & Inst. Code,] § 224.1, subd. (c).)

""'"[R]eason to believe that an Indian child is involved" triggers the duty of further inquiry. (§ 224.2, subd. (e), 1st par.) "[R]eason to believe" exists whenever the court or [the agency] has "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) The required further inquiry includes interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility. (§ 224.2, subd. (e)(2)(A)–(C).)

"'The duty to provide notice arises only if [the agency] or the court "knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a); see [Welf. & Inst. Code,] § 224.3, subd. (a); *Austin J., supra*, 47 Cal.App.5th at pp. 883–884.) Federal regulations define the grounds for reason to know that an Indian child is involved. (25 C.F.R. § 23.107(c)(1)–(6) (2022).) State law conforms to that definition. (§ 224.2, subd. (d)(1)–(6).)' (*Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678–679.)" (*K.H., supra*, 84 Cal.App.5th at pp. 596–598, fn. omitted; accord, *E.C., supra*, 85 Cal.App.5th at pp. 139–141.)

## II.    Analysis

### A.    Summary of ICWA Inquiry

The record reflects that Mother and Father filed ICWA forms denying Indian ancestry on January 16, 2020, and the juvenile court subsequently found that ICWA did not apply at the jurisdiction and disposition hearing held on October 21, 2020. Mother and Father again denied Indian ancestry on October 19, 2021. There is no indication that any ICWA inquiries were made of anyone else, however, even though Mother and Father had relatives who were in contact with the Department or were mentioned in reports, including maternal grandmother, maternal grandfather, maternal uncle, and paternal

10.

grandmother. (§ 224.2, subd. (b).) In addition, V.W. turned 18 years old during this proceeding. (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)

In their appeals, Mother and Father argue that the Department and the juvenile court failed to comply with their duties of inquiry under ICWA and, therefore, the matter must be remanded for compliance.

The Department does not dispute that only Mother and Father were asked about Indian ancestry or that there were others to ask, but it disputes there was any harm. The Department urges us to place the burden of demonstrating prejudice on Mother and Father (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1024 (dis. opn. of Crandall, J.); *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069–1070; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431), or, in the alternative, to apply the "reason to believe" approach in *In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted September 21, 2022, S275578. The Department also requests that we reject the approach articulated in *Benjamin M., supra*, 70 Cal.App.5th at page 744, but if we follow that approach, the Department requests we adopt the narrow interpretation applied in *In re S.S.* (2022) 75 Cal.App.5th 575 and *In re Darian R.* (2022) 75 Cal.App.5th 502. (See *K.H., supra*, 84 Cal.App.5th at p. 617, quoting *Benjamin M., supra*, at p. 744 ["The [*Benjamin M.*] approach is potentially susceptible to being read in different ways, depending on whether courts interpret it broadly or narrowly overall, and depending on how they interpret 'readily obtainable information' and 'likely to bear meaningfully' on the inquiry more specifically."].)

Recently, in *K.H.* and *E.C.*, we addressed the issue of error under ICWA at the inquiry stage, declined to follow the general approaches articulated by other appellate courts for determining whether an ICWA error is prejudicial and requires reversal, and concluded instead that the California Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H., supra*, 84 Cal.App.5th at pp. 590–591, citing *A.R., supra*, 11 Cal.5th at pp. 252–254; accord, *E.C., supra*, 85 Cal.App.5th at pp. 135–136.) In *K.H.*, which was issued after briefing was

11.

complete in this case, we detailed our reasons for declining to adopt the approaches articulated in *In re A.C., supra*, 65 Cal.App.5th at pages 1069–1070, *In re Dezi C., supra*, 79 Cal.App.5th at page 779, review granted, and *Benjamin M., supra*, 70 Cal.App.5th at page 744, and we need not repeat that analysis here. (*K.H., supra*, at pp. 612–617.) As discussed in more detail below, applying the standard we articulated in *K.H.* and *E.C.*, we conclude that the error here is prejudicial and remand for a proper, adequate, and duly diligent inquiry is required. (*K.H., supra*, at pp. 620–621; *E.C., supra*, at p. 157.)

## B.     Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.'" (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, 85 Cal.App.5th at p. 142.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…'" (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143.)

Under the substantial evidence standard, "'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence."'" ([*In re*] *Caden C.* [(2021) 11 Cal.5th 614,] 640; accord, [*In re*] *Ezequiel G.* [(2022) 81 Cal.App.5th 984,] 1004.) The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 883), and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' (*ibid.*). '[I]f a

court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' (*Id.* at p. 847.)" (*K.H., supra*, 84 Cal.App.5th at p. 601; accord, *E.C., supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the agency's inquiry was proper and adequate within the context of ICWA and California law, and whether the agency acted with due diligence." (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C., supra*, 11 Cal.5th at p. 640; accord, *E.C., supra*, 85 Cal.App.5th at p. 143; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H., supra*, at p. 589; accord, *E.C., supra*, at p. 143; *In re Ezequiel G., supra*, at pp. 1004–1005.)

"'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when """"the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination."""" [Citation.] But " "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court""" [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' ([*In re*] *Caden C., supra*, 11 Cal.5th at p. 641.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but '"[a]n appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law."' (*People v. Vivar* (2021) 11 Cal.5th 510, 527, quoting *In re George T.* (2004) 33 Cal.4th 620, 634.) Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied. (*In re J.K.* [(2022)] 83 Cal.App.5th [498,]

13.

504, citing *In re J.L.* (2017) 10 Cal.App.5th 913, 918; accord, [*In re*] *D.S., supra*, 46 Cal.App.5th at p. 1051; *In re Michael V., supra*, 3 Cal.App.5th at p. 235, fn. 5); *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254; see *People v. Ault* (2004) 33 Cal.4th 1250, 1266 ['[I]ndependent appellate review of a mixed law and fact question is crucial when an excessively deferential appellate affirmance risks error in the *final determination* of a party's rights, either as to the entire case, or on a significant issue in the litigation.'].)" (*K.H., supra*, 84 Cal.App.5th at p. 602; accord, *E.C., supra*, 85 Cal.App.5th at pp. 153–154.)

### C. Department and Juvenile Court Erred

#### 1. Duties

As previously stated, the juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).) "[A]t the first appearance in court of each party, the juvenile court has a duty to 'ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'" (*K.H., supra*, 84 Cal.App.5th at p. 598, quoting § 224.2, subd. (c); accord, *E.C., supra*, 85 Cal.App.5th at p. 141.)

"Further, the Department has a broad duty of initial inquiry as follows: 'If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.' (§ 224,

14.

subd. (b).) "'[E]xtended family member" shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ['As used in connection with an Indian child custody proceeding, the terms "extended family member" and "parent" shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act.'].)

"If the court or the Department 'has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court, social worker, or probation officer shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (§ 224.2, subd. (e), italics added.) 'There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.…' (*Id.*, subd. (e)(1).)

"Effective January 1, 2020, the California Rules of Court[8] require the Department to, 'on an ongoing basis[,] include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new information is received, that information must be expeditiously provided to the tribes.' (Rule 5.481(a)(5).)" (*E.C., supra*, 85 Cal.App.5th at pp. 141–142; accord, *K.H., supra*, 84 Cal.App.5th at pp. 598–599.)

---

**8** All further references to rules are to the California Rules of Court.

### 2. Juvenile Court's Finding Unsupported by Substantial Evidence

In this case, the Department inquired only of Mother and Father, which it does not dispute falls short of complying with the plain language of section 224.2, subdivision (b). "We recognize the frustration with the sheer volume of cases suffering from this fundamental defect given that the vast majority of inquiries will not result in a finding that a child is or may be an Indian child. However, '[t]he judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function.' (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 53.) Agencies and lower courts are, by now, on very clear notice of the problems caused when little to no inquiry is made. While we are not persuaded that compliance with section 224.2 will prove onerous once agencies provide a record of their efforts for the juvenile court to review, we may not interpret the law to relieve either one of the burden of complying with the plain directives of the statute." (*K.H., supra*, 84 Cal.App.5th at pp. 619–620, fn. omitted.)

As we recognized in *K.H.*, "'"[a] parent challenging ICWA compliance cannot always easily obtain the missing information, even when that missing information is about a parent's possible Indian ancestry.'" ([*In re*] *Y.M.* [(2022) 82 Cal.App.5th 901,] 914, quoting *Benjamin M., supra*, 70 Cal.App.5th at p. 743, fn. omitted.) Additionally, while a parent may or may not be in possession of information about Indian ancestry, we also cannot assume a parent's interest necessarily aligns with the tribe's interest. (*In re G.H.* (2022) 84 Cal.App.5th 15, 31.) By virtue of being haled into court for a dependency proceeding, the parent is facing challenges that have interfered with the parent's ability to provide a stable, safe home for the child, and in any given case, the parent may have an interest adverse to that of the tribe. (*Id.* at p. 31 [parents may be uninterested in or uncommitted to protecting tribal interests]; *In re J.W.* (2022) 81 Cal.App.5th 384, 393 (dis. opn. of Wiley, J. [protection of 'tribal interest cannot turn on

16.

whether [a relative] has an active interest in making tribal contact'; it is speculative '[t]o forecast … attitude about a tribal heritage'].)" (*K.H., supra*, 84 Cal.App.5th at p. 613.)

Simply put, "[t]he law demands more than merely inquiring of Mother and Father" (*K.H., supra*, 84 Cal.App.5th at p. 620, citing *In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; accord, *In re M.M.* (2022) 81 Cal.App.5th 61, 74, review granted Oct. 12, 2022, S276099 (dis. opn. of Wiley, J.)), a point the Department does not dispute. There may be cases in which there is no one else to ask, but, if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) Properly developed and documented, "the court has relatively broad discretion [in such cases] to determine [that] the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H., supra*, at p. 589; accord, *E.C., supra*, 85 Cal.App.5th at p. 157.)

Under these circumstances, the Department did not fulfill its statutory duty of inquiry. (§ 224.2, subds. (b), (e).) As a result, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence that the Department conducted an adequate, proper, and duly diligent inquiry, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

### D. Prejudice

"Where, as here, the deficiency lies with an agency's duty of initial inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law (*Benjamin M., supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has

17.

resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H., supra*, 84 Cal.App.5th at p. 606; accord, *E.C., supra*, 85 Cal.App.5th at p. 151.)

"'[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' (*In re Richard E.* (1978) 21 Cal.3d 349, 354; accord, *People v. Johnson* (2022) 12 Cal.5th 544, 605–606; *In re S.O.* (2020) 48 Cal.App.5th 781, 786–787; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 780; *In re N.V.* (2010) 189 Cal.App.4th 25, 31), and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error' (*In re Celine R.* (2003) 31 Cal.4th 45, 60, citing *Watson, supra*, 46 Cal.2d at p. 836; accord, *In re Christopher L.* (2022) 12 Cal.5th 1063, 1073; *A.R., supra*, 11 Cal.5th at p. 252)." (*K.H., supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C., supra*, 85 Cal.App.5th at pp. 151–152.)

However, in *A.R.*, the California Supreme Court "recognized that while we generally apply a *Watson* likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. (*A.R., supra*, 11 Cal.5th at pp. 252–253.) In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect. (*Id.* at p. 252.)" (*K.H., supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, "'ICWA compliance presents a unique situation ....' (*In re K.R.* (2018) 20 Cal.App.5th 701, 708; accord, [*In re*] *N.G., supra*, 27 Cal.App.5th at p. 483.)" (*K.H., supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id.* at p. 609; accord, *E.C., supra*, 85 Cal.App.5th at p. 154.) Rather, "'[t]he purpose of ICWA and related California statutes

18.

is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' *([In re] N.G., supra*, at p. 484, citing *In re K.R., supra*, at p. 708), and an adequate … inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H., supra*, at p. 608; accord, *E.C., supra*, 85 Cal.App.5th at pp. 152–153.) Yet, "while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA (*[In re] J.C.* [(2022)] 77 Cal.App.5th [70,] 83; accord, *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1078; *In re Michael V., supra*, 3 Cal.App.5th at p. 233), and parents may raise the claim of error for the first time on appeal (*[In re] Isaiah W., supra*, 1 Cal.5th at p. 13; accord, *[In re] A.W., supra*, 38 Cal.App.5th at p. 665; *[In re] N.G., supra*, at p. 483; *In re K.R., supra*, at p. 708)." (*K.H., supra*, at p. 608; accord, *E.C., supra*, p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the social services agency or the juvenile court. (*K.H., supra*, at p. 596; accord, *E.C., supra*, at pp. 139–140.)

"Although the duty of inquiry is a continuing one (§ 224.2, subd. (a)), as we have seen in countless cases, including here, if the inquiry is inadequate from the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously." (*K.H., supra*, 84 Cal.App.5th at p. 609; accord, *E.C., supra*, 85 Cal.App.5th at p. 154.) "Thus, 'the relevant injury under ICWA is not tied to whether the appealing parent can demonstrate to the juvenile court or a reviewing court a likelihood of success on the merits of whether a child is an Indian child[, under a standard *Watson* analysis]. The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the juvenile court needs to ensure accuracy in

19.

determining whether further inquiry or notice is required, and whether ICWA does or does not apply. Many cases do not proceed beyond the inquiry at the first stage in the compliance process and, therefore, ensuring adequacy and accuracy at this step is critical'" (*E.C., supra*, at p. 154, quoting *K.H., supra*, at p. 591), and "'requiring adequacy as the law directs "is generally the only meaningfully way to safeguard the statutory right[s]" as intended under ICWA and related California law [citation]. If this step is disregarded, the protection Congress and the state Legislature intended to afford tribes goes unrealized'" (*E.C., supra*, at p. 154, quoting *K.H., supra*, at p. 609).

"[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H., supra*, 84 Cal.App.5th at p. 610, citing *A.R., supra*, 11 Cal.5th at pp. 252–254; accord, *E.C., supra*, 85 Cal.App.5th at p. 155.) Here, the ICWA inquiry, limited only to Mother and Father, "'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law'" (*E.C., supra*, at p. 156, quoting *K.H., supra*, at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes'" (*E.C., supra*, at p. 155, quoting *K.H., supra*, at p. 611). Therefore, the error is prejudicial and reversal is required.

Accordingly, "'the juvenile court's finding that ICWA does not apply is conditionally reversed, and th[e] matter is remanded. On remand, the juvenile court shall direct the Department to conduct a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e),] and document its inquiry in the record in compliance with rule 5.481(a)(5).'" (*E.C., supra*, 85 Cal.App.5th at p. 157, quoting *K.H., supra*, 84 Cal.App.5th at p. 621.) "'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [N.R.]' but '[w]e leave

20.

that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the Department.  So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding.  (§ 224.2, subd. (i)(2).)'"  (*E.C., supra*, at p. 157, quoting *K.H., supra*, at p. 621.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the Department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivisions (b) and (e), and rule 5.481(a)(5).  If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.  In all other respects, the court's orders terminating Mother's and Father's parental rights are affirmed.


MEEHAN, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.

21.